UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
JORGE LUZQUIÑOS,

      Plaintiff,

          -against-

EILEEN MYERS, a.k.a. EILEEN MEYERS,
a.k.a. EILEEN LIERMAN; JEMAA FAMILY
LIMITED PARTNERSHIP, a.k.a. JEMAB
FAMILY LIMITED PARTNERSHIP; and SAM
REALTY, LLC,

      Defendants.
---------------------------------------------------------X

<u>SECOND AMENDED</u>
<u>COMPLAINT</u>

06 CV 3553 (MGC) (FM)
ECF CASE

PRELIMINARY STATEMENT

This is an action to obtain unpaid wages and other compensation owed to Jorge

Luzquiños by Eileen Myers ("Defendant Myers"), JEMAA Family Limited Partnership

("Defendant JEMAA"), and Sam Realty, LLC ("Defendant Sam Realty"), for violations of, *inter*

*alia*, minimum wage, overtime, health and safety, and other federal and state labor laws.  At all

times relevant to this action Defendant Myers was the employer of Mr. Luzquinos.  Defendant

JEMAA inherited liability as a successor in interest to Defendant Myers.  Defendant Sam Realty

is liable as the general partner of Defendant JEMAA.

For over five years, Mr. Luzquiños was responsible for nearly all work related to

Defendants' approximately 25 properties in Westchester and Putnam counties in New York state.

His work included: making tenants' homes livable, doing major interior and exterior repairs and

improvements on Defendants' often dilapidated properties, fielding calls from and showing

potential tenants apartments, and being available at all times of the day or night to make

emergency repairs.

As Defendant Myers became aware of Mr. Luzquiños's numerous skills, Defendant Myers exploited him to support and expand her business.  As time passed, Defendant Myers placed more and more responsibilities on Mr. Luzquiños without asking his consent to take on additional tasks and without providing him corresponding compensation.  To complete his varied responsibilities, Mr. Luzquiños worked long and taxing hours, often without the minimum wage and overtime premiums to which he was entitled.  Even when Mr. Luzquiños was compensated, he was paid sporadically and intermittently, sometimes working a full month without pay.  Defendant Myers's unlawful payment practices crippled Mr. Luzquiños's ability to maintain the financial security of his family.  Defendant Myers also regularly subjected Mr. Luzquiños to dangerous and hazardous working conditions and failed to provide the safety equipment for the work she required him to perform, as required by law.  As a result, Mr. Luzquiños suffered serious injuries on multiple occasions.

Defendant Myers is an employer well versed in financial and legal matters who took advantage of Mr. Luzquiños and controverted the purpose of federal and state labor laws.  Defendant Myers has a pattern of violating various contracts, health and safety regulations, housing leases, and building and residential codes in order to maximize the profit of her business.

Defendant Myers has a pattern of shifting formal ownership of her properties in a suspicious manner, which has led to judicial scrutiny.  Within a few months after Mr. Luzquiños left her employ, Defendant Myers began transferring properties to Defendant JEMAA, an out-of-state limited partnership that had been recently formed by Defendant Myers's relatives and other close associates.  Defendant Myers received no consideration for the transfer of these valuable properties.  Even after a significant number of these transfers were voided because they were

conducted to frustrate judicial orders, Defendant Myers continued transferring properties to

Defendant JEMAA.  Despite these paper transfers, Defendant Myers continues to operate these

rental properties as she had before the transfers.

Mr. Luzquiños is now before the court reclaiming his dignity and respect, and seeking

redress for the violation of his rights as a worker.


## JURISDICTION AND VENUE

1.    Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).  This

Court has supplemental jurisdiction over Mr. Luzquiños's state law claims pursuant to 28

U.S.C. § 1367(a).

2.    Venue is proper pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or

omissions giving rise to this action occurred within this district, Defendants are located,

reside, own property, or do business in this district, and a substantial part of property that is

the subject of the action is situated in this district.


## PARTIES

3.    Jorge Luzquiños was employed by Eileen Myers ("Defendant Myers") from approximately

July 2000 to the end of September 2005.

4.    Mr. Luzquiños's job included construction, roofing, plumbing, electrical work, carpentry,

real estate services and general maintenance.

5.    At all times relevant to this action, Mr. Luzquiños was an employee of Defendant Myers

within the meaning of the Fair Labor Standards Act and New York State Labor Law.

6.    At all times relevant to this action, Defendant Myers has been the owner of numerous properties in Westchester and Putnam counties in New York state.  Many of these properties consist of one, two and three-family homes ("the rental properties").

7.    At all times relevant to this action, Defendant Myers has operated a property rental and management business ("the property management business"), including leasing of the rental properties to various residential tenants.

8.    Defendant Myers employed Mr. Luzquiños to work on approximately 25 of the rental properties.

9.    Upon information and belief, throughout the course of Mr. Luzquiños's employment with Defendant Myers, the properties for which Mr. Luzquiños was responsible were not owned or held by any corporate entity.

10.   Throughout the course of Mr. Luzquiños's employment with Defendant Myers, no corporate entity was responsible for the employment matters of Mr. Luzquiños.

11.   At all times relevant to this action, Defendant Myers has operated a business or enterprise engaged in interstate commerce.

12.   Upon information and belief, Defendant Myers's business or enterprise has grossed over $500,000 annually.

13.   At all times relevant to this action, Defendant Myers employed Mr. Luzquiños, who handled or otherwise worked on goods or materials that had been moved in or produced for interstate commerce.

14.   Throughout the course of Mr. Luzquiños's employment with Defendant Myers, Defendant Myers or her agents would directly assign tasks to Mr. Luzquiños.

15.   Throughout the course of Mr. Luzquiños's employment with Defendant Myers, Defendant Myers had power and control over hiring, firing, rates and methods of payment, work schedules, maintenance of employment records, and terms and conditions of employment relating to Mr. Luzquiños.

16.   Defendant JEMAA Family Limited Partnership ("Defendant JEMAA") is a limited partnership registered in the state of Nevada.

17.   Defendant Sam Realty, LLC ("Defendant Sam Realty") is a limited liability company registered in the state of Nevada.  Defendant Sam Realty formed as a limited liability company by filing its articles of incorporation with the Nevada Secretary of State on or about June 22, 2006.  Defendant Sam Realty is the general partner of Defendant JEMAA . The managing member of Defendant Sam Realty is James Lierman.

18.   Upon information and belief, Defendant Myers has also been known as Eileen Lierman.

19.   Upon information and belief, the limited partners of Defendant JEMAA consist of family members or close personal associates of Defendant Myers.

20.   During the court conference on September 26, 2006 for this lawsuit, Defendant Myers represented that she had transferred properties to a partnership consisting of her son, ex-husband, and ex-brother-in-law.

21.   Upon information and belief, Defendant JEMAA was formed specifically for the purpose of receiving and holding properties transferred from Defendant Myers.

22.   Upon information and belief, Defendant Myers fraudulently transferred properties to Defendant JEMAA.

23.   Upon information and belief, Defendant Myers transferred properties to Defendant JEMAA in order to evade liability and frustrate court orders.

24.     Defendant JEMAA was registered as a limited partnership on or about November 17, 2005.

25.     On or about December 2005, Defendant Myers began to transfer her property holdings in Westchester and Putnam Counties to Defendant JEMAA.

26.     On or about March 2006, Defendant Myers's transfers of properties to Defendant JEMAA were voided by judicial decree, because the transfers were made in an attempt to frustrate court orders.

27.     On or about May 2006, Defendant Myers again transferred properties to Defendant JEMAA.

28.     Upon information and belief, Defendant Myers transferred properties, which had been recently assessed at significant values, to Defendant JEMAA for sales prices of zero dollars.

29.     Upon information and belief, Defendant Myers has retained control over the properties that she has formally transferred to Defendant JEMAA.

30.     Upon information and belief, Defendant Myers has continued to use one of the properties that she formally transferred to Defendant JEMAA as a personal residence.

31.     Upon information and belief, despite the formal transfer of the rental properties from Defendant Myers to Defendant JEMAA, the operations of the property management business have substantially continued unchanged, as the same group of properties continue to be rented out to substantially the same tenants, in substantially the same condition, under substantially the same terms, with the same management, using substantially the same personnel.

32.     Upon information and belief, Defendant JEMAA expressly or impliedly agreed to assume the debts and obligations of Defendant Myers's property management business.

STATEMENT OF FACTS

33.    Upon Defendant Myers's request, Mr. Luzquiños began performing services for Defendant

        Myers in approximately July 2000.

34.    At the start of Mr. Luzquiños's employment, Defendant Myers and Mr. Luzquiños

        established a work schedule of 8 a.m. to 4 p.m., Monday through Friday.

35.    At the start of Mr. Luzquiños's employment, Defendant Myers agreed to pay Mr.

        Luzquiños a regular rate of pay of $10 per hour, for his work.

36.    From approximately July 2000 through October 2000, Mr. Luzquiños generally worked

        approximately 40 to 45 hours per week.

37.    From approximately July 2000 through October 2000, Mr. Luzquiños generally received

        compensation for the first 40 hours he worked in a week, but was generally denied

        compensation altogether for any remaining weekly hours he worked.

38.    In approximately November 2000, Defendant Myers and Mr. Luzquiños expanded his work

        schedule to 8am to 4pm, Monday through Saturday.

39.    From approximately November 2000 through the end of his employment, Mr. Luzquiños

        generally worked 48 to 56 hours per week.

40.    Occasionally there was a significant increase in Mr. Luzquiños's work schedule, in which

        he worked up to 80 hours a week.

41.    From approximately November 2000 through the end of his employment, Mr. Luzquiños

        generally received compensation for the first 48 hours he worked in a week at his regular

        rate, but was generally denied compensation altogether for any remaining weekly hours he

        worked.

42.    In approximately August 2003, Defendant Myers agreed to increase Mr. Luzquiños's pay to a regular rate of $12.50 per hour.

43.    During the course of his employment, Mr. Luzquiños regularly worked in excess of ten hours a day.

44.    Mr. Luzquiños reported his activities to Defendant Myers several times a day, including the fact that they were performed after his established schedule.

45.    Defendant Myers often called Mr. Luzquiños to ask him to do additional work outside of his established schedule, including evenings and Sundays.

46.    From approximately July 2000 to August 2003, Mr. Luzquiños was supervised by Defendant Myers and her residential janitor.

47.    Throughout Mr. Luzquiños's employment, Defendant Myers's properties were regularly inspected for violations of city codes by government officials, including ones from the City of Peekskill Department of City Services.

48.    After these government inspections, Defendant Myers typically required Mr. Luzquiños to make the required repairs in order to correct code violations.

49.    During the weeks after inspections, Mr. Luzquiños had to work many overtime hours in order to bring the properties up to code within the mandated deadline.

50.    Mr. Luzquiños often worked after his regular work hours attending to tenants' complaints, including, but not limited to, plumbing, heating and electrical problems.

51.    Defendant Myers failed to pay Mr. Luzquiños an extra hour's pay, at minimum wage, for every day that he worked over ten hours, in violation of New York State Labor Law.

52.    Starting in approximately September 2005, and for a total of approximately three weeks, Defendant Myers stopped paying Mr. Luzquiños altogether.

8

53.     Defendant Myers violated the Fair Labor Standards Act and New York State Labor Law by failing to pay Mr. Luzquiños the minimum wage, including for all of his weekly hours over 40 from approximately July 2000 through October 2000, for all of his weekly hours over 48 from approximately November 2000 through the end of his employment, and his final three weeks of pay in approximately September 2005.

54.     Defendant Myers failed to pay Mr. Luzquiños his required wages for the three final weeks of his employment in approximately September 2005, and regularly failed to pay Mr. Luzquiños in full for the hours he worked under his established schedule, in violation of their oral employment contract.

55.     For the duration of his employment, Defendant Myers failed to pay Mr. Luzquiños overtime pay at a rate of one and a half times his regular rate for the hours he worked in excess of 40 hours per week, in violation of the Fair Labor Standards Act and New York State Labor Law.

56.     Upon information and belief, Defendant Myers did not record, maintain, or preserve records of the total hours Mr. Luzquiños worked, or any cash wages Defendant Myers paid Mr. Luzquiños, in violation of the Fair Labor Standards Act and New York Labor Law.

57.     Defendant Myers's violations of the Fair Labor Standards Act and New York Labor Law were knowing, deliberate and willful.

58.     During Mr. Luzquiños's employment, Defendant Myers requested he transform an uninhabitable attic in one of her properties into a residential unit.

59.     Under Defendant Myers's direction, Mr. Luzquiños spent several months, working many hours outside of his established schedule, to transform the one room attic into a two-room apartment, adding a kitchen and a bathroom where there were none.

60.     Defendant Myers failed to pay Mr. Luzquiños for any of the approximately 350 hours he worked on her attic, in violation of the minimum wage and overtime provisions of the Fair Labor Standards Act and New York State Labor Law.

61.     Once the attic unit was remodeled, Mr. Luzquiños became a tenant in the unit and began paying rent to Defendant Myers.

62.     After Mr. Luzquiños's tenancy ended, Defendant Myers charged subsequent tenants the same rent for the attic unit as she had charged him.

63.     Defendant Myers regularly deducted Mr. Luzquiños's rent from his wages without his express authorization and over his objections, in violation of New York Labor Law.

64.     Around the beginning of his employment, Mr. Luzquiños and Defendant Myers agreed that he would be paid on a weekly basis and that his payday would be Saturday.

65.     Despite having agreed to a weekly pay schedule, Defendant Myers almost always failed to follow it.

66.     Mr. Luzquiños was often forced to work for three to four weeks without being compensated for his labor, in violation of New York State Labor Law and the Fair Labor Standards Act.

67.     Defendant Myers's requirement that Mr. Luzquiños accept wages on a non-weekly basis as a condition of employment was in violation of New York State Labor Law.

68.     Defendant Myers's failure to adhere to a regular pay schedule created substantial instability in Mr. Luzquiños's life and family, and impeded his ability to plan and provide for his family in a consistent manner.

69. Mr. Luzquiños was responsible for maintaining the common areas, including fixing stairwells; maintaining proper lighting; maintaining front and back yards; and shoveling snow during the winters.

70. Mr. Luzquiños was responsible for regular maintenance duties, including replacing and fixing faucets, toilets, pipes and bathtubs; bleeding radiators; cleaning the chimneys; exterminating insects and rodents; and fixing doors, windows and stairs.

71. Mr. Luzquiños was also regularly responsible for substantial repairs and remodeling, including leveling floors; remodeling apartments; painting; rebuilding and reshingling roofs; installing vinyl siding; installing insulation; replacing carpeting; and fixing and replacing cabinets.

72. Mr. Luzquiños was responsible for remodeling properties that Defendant Myers purchased during his employment, which were generally in disrepair.  His tasks included, but were not limited to: building new walls, installing sheetrock, rebuilding roofs, painting, replacing windows, replacing doors, installing vinyl siding and remodeling the interior of rooms.

73. During the course of Mr. Luzquiños's employment, Defendant Myers could not speak or understand Spanish.

74. Upon Defendant Myers's direction, Mr. Luzquiños provided various language services for Defendant Myers's business, such as communicating with current and prospective Spanish-speaking tenants.

75. Mr. Luzquiños's language skills greatly benefited Defendant Myers whose tenants are almost exclusively Spanish-speaking.

76.   Throughout the course of his employment, Mr. Luzquiños performed a myriad of services that were accepted by Defendant Myers.  Mr. Luzquiños expected compensation for these services.

77.   During the period of his employment, Mr. Luzquiños was denied by Defendant Myers the reasonable value of his services.

78.   Defendant Myers was unjustly enriched by her failure to adequately compensate Mr. Luzquiños for the services he performed.

79.   Mr. Luzquiños was required to drive Defendant Myers's work van in order to carry out his employment tasks.

80.   Generally, Defendant Myers would give Mr. Luzquiños money at the beginning of each week to cover materials for work and gas for the van.

81.   On many occasions, Mr. Luzquiños did not receive sufficient money for materials and gas to perform his duties.

82.   In order to carry out his duties for Defendant Myers, Mr. Luzquiños was often forced to purchase materials and gas using his personal funds.

83.   Mr. Luzquiños's expenditures on materials and gas were primarily for the benefit of Defendant Myers.

84.   In order to discharge his duties for Defendant Myers, Mr. Luzquiños was required to maintain a cellular phone throughout his employment with Defendant Myers.

85.   Out of his personal funds, Mr. Luzquiños purchased the cellular phone and paid all bills and expenses related to the phone.

86.   Defendant Myers would call Mr. Luzquiños on his cellular phone at all hours for work-related matters.

87.     Defendant Myers's tenants were also instructed to call Mr. Luzquiños's cellular phone for any concerns related to their tenancy.

88.     In advertisements and announcements to promote her business and recruit tenants for her properties, Defendant Myers listed Mr. Luzquiños's cellular phone number as a contact for inquiries.

89.     Defendant Myers repeatedly refused Mr. Luzquiños's requests that she either pay for the work-related cellular phone charges or provide a work phone.

90.     Defendant Myers also repeatedly refused Mr. Luzquiños's requests to remove his number from the advertisements and announcements to reduce the volume of calls he received on his cellular phone.

91.     Because of the high volume of calls that he received from Defendant Myers and Defendant Myers's current and prospective tenants, Mr. Luzquiños suffered financial hardship, incurring significant charges which he was forced to pay.

92.     Mr. Luzquiños's expenditures for his cellular phone benefited Defendant Myers.

93.     Defendant Myers regularly failed to reimburse Mr. Luzquiños for the work-related expenses of materials, gas and work-related cellular phone charges.

94.     Defendant Myers's failure to reimburse Mr. Luzquiños's personal expenditures on materials, gas and work-related cellular phone charges constituted wage deductions without express authorization from Mr. Luzquiños, in violation of New York Labor Law.

95.     Defendant Myers's failure to reimburse Mr. Luzquiños's personal expenditures on materials, gas and work-related cellular phone charges constituted wage deductions that were primarily for the benefit of Defendant Myers.

96.     As part of his employment, Mr. Luzquiños was required to perform tasks for Defendant Myers which put his safety at risk and involved hazardous conditions.

97.     Mr. Luzquiños was required to, *inter alia*, work at elevated heights, use open flames in restrictive and highly flammable places, fix live electric wiring, and work in dusty and debris-filled environments.

98.     As his employer and supervisor, Defendant Myers exercised authority to control Mr. Luzquiños's working conditions and directed him to perform employment tasks which put his safety at risk.

99.     Throughout Mr. Luzquiños's employment, Defendant Myers knowingly and willfully failed to provide equipment that would protect Mr. Luzquiños's health and safety.

100.    On multiple occasions, Mr. Luzquiños installed entire roofs, replaced shingles, fixed existing roofs and cleaned chimneys for Defendant Myers's properties.

101.    Mr. Luzquiños was not provided any safety equipment such as scaffolding, safety belts, helmets, platforms, roof brackets, hoists, stays, slings, hangers, blocks, pulleys, braces, irons, or ropes while doing roofing and chimney work, as required by New York State Labor Law.

102.    On multiple occasions, Mr. Luzquiños was required to repair electric systems in Defendant Myers's properties, exposing him to live currents and short circuits.

103.    Mr. Luzquiños was not provided any safety equipment such as body aprons or protective eyewear while doing electrical work, as required by the relevant New York Industrial Code.

104.    On multiple occasions, Mr. Luzquiños was required to solder broken piping in Defendant Myers's properties.

105.    Mr. Luzquiños was required to climb into narrow shafts, using a blow torch in cramped, unventilated areas surrounded by flammable materials.

106.    Mr. Luzquiños was not provided protective goggles, protective clothing, fire extinguishers, wrist straps, the assistance of another person or safety monitors while working in shafts, as required by the relevant New York Industrial Code.

107.    On multiple occasions, while Mr. Luzquiños was performing work for Defendant Myers, he suffered burns on his arms, neck and face as a result of sparks from soldering pipes.

108.    On multiple occasions, Mr. Luzquiños performed major construction work at Defendant Myers's direction, exposing him to broken and raised nails, and falling debris.

109.    Mr. Luzquiños was not provided any safety equipment such as a helmet or work boots for construction work, as required by the relevant New York Industrial Code.

110.    On multiple occasions, Mr. Luzquiños installed and replaced vinyl siding on the exterior of Defendant Myers's properties, working at elevated heights.

111.    Mr. Luzquiños was not provided any safety equipment such as a helmet or platforms for installing vinyl siding, as required by the New York Industrial Code.

112.    On one occasion, because he was not provided a helmet or a platform, Mr. Luzquiños was injured by a falling piece of siding, receiving a deep gash near his eye which left a permanent scar.

113.    Defendant Myers witnessed Mr. Luzquiños bleeding profusely immediately after he was injured by the falling siding and failed to provide any medical care or assistance. Defendant Myers simply told Mr. Luzquiños to "be careful" and walked away.

114.    On more than one occasion, Mr. Luzquiños requested that he be provided with protective equipment and the assistance of another person while he performed dangerous tasks.

115.   Defendant Myers failed to provide protective equipment for her employee, Mr. Luzquiños, in violation of health and safety provisions of New York State Labor Law §§ 200, 240, and 241, and knowingly and willingly exposed him to serious risk of injury.

116.   Mr. Luzquiños also identified to Defendant Myers that the assistance of another person while working in shafts was necessary for his safety, but Defendant Myers failed to provide such help, in violation of health and safety provisions of New York State Labor Law § 200.

117.   In approximately October 2003, Defendant Myers directed Mr. Luzquiños to replace the entire roof of Defendant Myers's two-story property located at 14 Harper Street in Lake Peekskill, New York.

118.   On or about October 18, 2003, in order to replace the roof of 14 Harper Street, Mr. Luzquiños was working at an elevated height.

119.   Mr. Luzquiños was not provided any safety equipment such as scaffolding, a safety belt, a helmet, a platform or roofing brackets, as required by the relevant New York Industrial Code and New York State Labor Law § 240 for work performed in the erection, demolition, repairing or altering of a building or structure.

120.   While replacing the roof for Defendant Myers's property, Mr. Luzquiños fell off the roof onto the ground.  Mr. Luzquiños was unable to move and remained on his stomach until paramedics and police arrived.

121.   The provision of safety equipment as required by New York Labor Law would have prevented Mr. Luzquiños from falling off the roof.

122.   Mr. Luzquiños was transported by ambulance to Westchester County Medical Center where he was admitted and treated for approximately four days.

123.    Subsequent to his accident, Mr. Luzquiños was assured by Defendant Myers that she would take care of any hospital fees and medical care associated with his accident.

124.    As a result of his injuries, Mr. Luzquiños was required to purchase prescription and non-prescription medications, as well as various physical therapy products following his release from the hospital.

125.    For a period following his injury, Mr. Luzquiños suffered from severe body pains, soreness from scrapes and other serious symptoms, including urinating blood.

126.    After Mr. Luzquiños's release from the hospital, Defendant Myers failed to compensate him while he recovered from his injuries for approximately one week.

127.    Despite chronic pain, Mr. Luzquiños returned to work upon Defendant Myers's request.

128.    Following his injury, Mr. Luzquiños continued to suffer from intense body pains, soreness and general fatigue from simple acts such as walking.

129.    This chronic pain has hindered Mr. Luzquiños's ability to pursue a wide range of opportunities and activities.

130.    Upon Mr. Luzquiños's return home from the hospital, Defendant Myers again stated to Mr. Luzquiños that she would pay for all of the medical expenses associated with his accident.

131.    Despite receiving Mr. Luzquiños's hospital bill, Defendant Myers has failed to pay this bill or the outstanding balance, leaving Mr. Luzquiños with late fees and damaged credit.

132.    Defendant Myers also failed to pay for or reimburse Mr. Luzquiños's medication and physical therapy expenses.

133.    Despite Mr. Luzquiños's serious accident, Defendant Myers continued to request that he do roofing work, as well as other dangerous tasks, without the protective equipment required by New York State Labor Law and the New York Industrial Code.

134.   Upon information and belief, Defendant Myers failed to insure or keep insured the payment of compensation in the New York State Workers Compensation fund.

135.   From time to time during his employment, Mr. Luzquiños expressed opposition to Defendant Myers's employment practices, including her wage payment practices and his unsafe working conditions.

136.   On one of these occasions, Defendant Myers sent Mr. Luzquiños and his family an eviction notice in direct and immediate retaliation to his complaints.

137.   Following the eviction notice, Defendant Myers regularly harassed Mr. Luzquiños and his family, including his young child: filing multiple frivolous housing court actions which were subsequently dismissed; turning off their heat in the winter; and withholding all of Mr. Luzquiños's wages.

138.   As a result of Defendant Myers's actions, Mr. Luzquiños suffered emotional distress.

139.   Mr. Luzquiños performed satisfactory services for Defendant Myers, and was never warned or disciplined.

140.   On at least one occasion since the end of Mr. Luzquiños's employment, Defendant Myers requested that one of her tenants inform Mr. Luzquiños that she wanted to re-hire him.

141.   Defendants are jointly and severally liable for all claims alleged in this complaint.

142.   Notice of this action has been sent to the Attorney General pursuant to § 215 of New York Labor Law.

143.   On or about November 15, 2006, an individual named "Eric" telephoned Mr. Luzquiños, stated that he was calling at Defendant Myers's request, urged him to resolve the matter out of court, and referenced possible retaliatory actions that he would ask Defendant Myers to refrain from taking in response to the lawsuit.

144.   On or about January 15, 2007, a man telephoned Mr. Luzquiños, identifying himself only by stating that he lived at 1214 Howard Street and was a tenant of Eileen Myers.  The man stated that Eileen Myers had told him to call Mr. Luzquiños to ascertain Mr. Luzquiños's full name and current address.  The man stated that Eileen Myers had told him to ask Mr. Luzquiños for this information because Mr. Luzquiños needed work.

145.   Mr. Luzquiños stated that he did not need work and requested that the man not contact him again.  However, that same day, the man called back and asked again for his current address.

146.   On February 7, 2007, Defendants filed an Answer to Mr. Luzquiños's First Amended Complaint.  The Answer included counterclaims by Defendant Myers against Mr. Luzquiños for breach of contract and conversion.

147.   Defendant Myers filed these counterclaims against Mr. Luzquiños in illegal retaliation for filing his complaint and pursuing his rights under the Fair Labor Standards Act and the New York Labor Law, in order to intimidate him from continuing to pursue his legal rights.

FIRST CLAIM FOR RELIEF
FEDERAL MINIMUM WAGE

148.   Mr. Luzquiños realleges and incorporates by reference paragraphs 1 through 147 above.

149.   Defendant Myers willfully failed to pay Mr. Luzquiños the minimum wage, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.

150.   Mr. Luzquiños is entitled to an award of damages from Defendants for unpaid minimum wages in an amount to be determined at trial.

SECOND CLAIM FOR RELIEF
FEDERAL OVERTIME VIOLATIONS

151.   Mr. Luzquiños realleges and incorporates by reference paragraphs 1 through 150 above.

152.   Defendant Myers willfully failed to pay Mr. Luzquiños the federal overtime premium of one-and-one half times the regular rate of pay for each hour worked in excess of 40 hours per week in violation of the Fair Labor Standards Act overtime provision, 29 U.S.C. §§207(a)(1) et seq.

153.   Defendant Myers deducted Mr. Luzquiños's rent from his wages without his express consent, so as to cut into the overtime wages required to be paid to Mr. Luzquiños, in violation of the Fair Labor Standards Act overtime provision, 29 U.S.C. §§207(a)(1) et seq. and supporting regulations and orders of the U.S. Department of Labor.

154.   Mr. Luzquiños is entitled to an award of damages from Defendants for unpaid overtime premiums in an amount to be determined at trial.

THIRD CLAIM FOR RELIEF
FEDERAL LIQUIDATED DAMAGES

155.   Mr. Luzquiños realleges and incorporates by reference paragraphs 1 through 154 above.

156.   Defendant Myers's willful failure to pay Mr. Luzquiños the minimum wage and overtime premiums violates 29 U.S.C. §§ 201, et seq. and supporting regulations and orders of the U.S. Department of Labor.

157.   Defendant Myers's willful failure to pay Mr. Luzquiños the minimum wage and overtime premiums on time and according to their agreed pay schedule violates 29 U.S.C. §§ 201, et seq. and supporting regulations and orders of the U.S. Department of Labor.

158.    Mr. Luzquiños is entitled to an award of liquidated damages from Defendants in an amount equal to the unpaid minimum wages, overtime premiums, and late payments to be determined at trial.

FOURTH CLAIM FOR RELIEF
NEW YORK STATE MINIMUM WAGE

159.    Mr. Luzquiños realleges and incorporates by reference paragraphs 1 through 158 above.

160.    Defendant Myers failed to pay Mr. Luzquiños the New York State minimum wage in violation of New York State Labor Law §§ 190 et seq. and §§ 650 et seq. and supporting regulations and orders of the New York State Department of Labor.

161.    Mr. Luzquiños is entitled to an award of damages from Defendants for unpaid minimum wages in an amount to be determined at trial.

FIFTH CLAIM FOR RELIEF
NEW YORK STATE OVERTIME VIOLATIONS

162.    Mr. Luzquiños realleges and incorporates by reference paragraphs 1 through 161 above.

163.    Defendant Myers failed to pay Mr. Luzquiños overtime premiums for all hours worked in excess of 40 hours per week from July 2000 to August 2003, in violation of New York State Labor Law §§ 190 et seq. and §§ 650 et seq. and supporting regulations and orders of the New York State Department of Labor.

164.    Mr. Luzquiños is entitled to an award of damages from Defendants for unpaid overtime premiums in an amount to be determined at trial.

SIXTH CLAIM FOR RELIEF
NEW YORK STATE "SPREAD OF HOURS" WAGES

165.    Mr. Luzquiños realleges and incorporates by reference paragraphs 1 through 164 above.

166. Defendant Myers failed to pay Mr. Luzquiños an extra hour's pay at minimum wage for every day that Mr. Luzquiños worked in excess of 10 hours, in violation of New York State Labor Law §§ 190, et seq. and §§650, et seq. and supporting regulations and orders of the New York State Department of Labor.

167. Mr. Luzquiños is entitled to an award of damages from Defendants for unpaid "spread of hours" wages in an amount to be determined at trial.

SEVENTH CLAIM FOR RELIEF
NEW YORK STATE LIQUIDATED DAMAGES

168. Mr. Luzquiños realleges and incorporates by reference paragraphs 1 through 167 above.

169. Defendant Myers willfully violated New York State Labor Law §§ 190 et seq. and §§ 650 et seq. and supporting regulations and orders of the New York State Department of Labor in failing to pay Mr. Luzquiños the minimum wage, overtime premiums for all hours worked in excess of forty hours per week, spread of hours payment for days worked in excess of ten hours a day, and payments on a weekly basis.

170. Mr. Luzquiños is entitled to an award of damages from Defendants equal to twenty-five percent of the unpaid wages, overtime premiums, and spread of hours wages in an amount to be determined at trial.

EIGHTH CLAIM FOR RELIEF
NEW YORK STATE RETALIATION

171. Mr. Luzquiños realleges and incorporates by reference paragraphs 1 through 170 above.

172. By her actions stated above, Defendant Myers took retaliatory action against Mr. Luzquiños for his complaints regarding her employment practices, in violation of New York State Labor Law § 215.

173.   Mr. Luzquiños is entitled to an award of compensatory and punitive damages from Defendants in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF
## DUTY TO COMPLY WITH WEEKLY SCHEDULE

174.   Mr. Luzquiños realleges and incorporates by reference paragraphs 1 through 173 above.

175.   By failing to pay Mr. Luzquiños on a weekly pay schedule, Defendant Myers violated her duties as an employer under New York State Law Labor Law §§ 191 et seq.

176.   Mr. Luzquiños is entitled to liquidated damages from Defendants in an amount to be determined at trial.

## TENTH CLAIM FOR RELIEF
## DUTY TO PROTECT HEALTH AND SAFETY OF EMPLOYEES

177.   Mr. Luzquiños realleges and incorporates by reference paragraphs 1 through 176 above.

178.   Defendant Myers exercised supervisory control over Mr. Luzquiños and had actual or constructive notice of dangerous working conditions, yet failed to protect Mr. Luzquiños from injury.

179.   Defendant Myers's negligent failure to provide Mr. Luzquiños reasonable and adequate protection for his life, health and safety violated New York State Labor Law § 200.

180.   Defendant Myers's failure to provide such equipment proximately caused Mr. Luzquiños to suffer various injuries.

181.   Mr. Luzquiños is entitled to compensatory damages, punitive damages and pain and suffering damages from Defendants in an amount to be determined at trial.

ELEVENTH CLAIM FOR RELIEF
DUTY TO PROVIDE SAFETY EQUIPMENT TO EMPLOYEES DURING
CONSTRUCTION AND REPAIRS

182.   Mr. Luzquiños realleges and incorporates by reference paragraphs 1 through 181 above.

183.   Defendant Myers exercised supervisory control over Mr. Luzquiños and had actual or constructive notice of dangerous working conditions, yet failed to protect Mr. Luzquiños from injury by providing safety equipment while Mr. Luzquiños worked on roofs and construction sites.

184.   Defendant Myers's failure to provide Mr. Luzquiños reasonable and adequate protection for his life, health and safety violated New York State Labor Law §§ 240 and 241.

185.   Defendant Myers's failure to provide such equipment proximately caused Mr. Luzquiños to suffer various injuries.

186.   Mr. Luzquiños is entitled to compensatory damages, punitive damages and pain and suffering damages from Defendants in an amount to be determined at trial.

TWELFTH CLAIM FOR RELIEF
ILLEGAL WAGE DEDUCTIONS

187.   Mr. Luzquiños realleges and incorporates by reference paragraphs 1 through 186 above.

188.   Defendant Myers's wage deductions for Mr. Luzquiños's rent and his expenditures on materials, gas and work-related calls were without his express authorization, in violation of New York Labor Law § 193 and relevant sections of the New York State Code, Rules and Regulations.

189.   Mr. Luzquiños is entitled to compensatory and liquidated damages from Defendants in an amount to be determined at trial.

THIRTEENTH CLAIM FOR RELIEF
BREACH OF CONTRACT

190.   Mr. Luzquiños realleges and incorporates by reference paragraphs 1 through 189 above.

191.   Defendant Myers entered into an oral employment contract with Mr. Luzquiños.

192.   Mr. Luzquiños adequately performed his obligations under the employment contract.

193.   Defendant Myers breached the employment contract with Mr. Luzquiños by failing to
comply with the promised terms and conditions of employment.

194.   Mr. Luzquiños is entitled to compensatory damages from Defendants in an amount to be
determined at trial.

FOURTEENTH CLAIM FOR RELIEF
UNJUST ENRICHMENT

195.   Mr. Luzquiños realleges and incorporates by reference paragraphs 1 through 194 above.

196.   Defendant Myers was unjustly enriched by services performed and actions undertaken by
Mr. Luzquiños.

197.   The circumstances between Mr. Luzquiños and Defendants are such that equity and good
conscience require Defendants to make restitution.

198.   Mr. Luzquiños is entitled to compensatory damages from Defendants, in an amount to be
determined at trial.

FIFTEENTH CLAIM FOR RELIEF
QUANTUM MERUIT

199.   Mr. Luzquiños realleges and incorporates by reference paragraphs 1 through 198 above.

200.   Mr. Luzquiños performed services for Defendant Myers with a reasonable expectation of
compensation.

201.   By her actions stated above, Defendant Myers wrongfully failed to pay Mr. Luzquiños the

reasonable value of the services he performed for Defendant Myers.

202.   Mr. Luzquiños is entitled to compensatory damages from Defendants, in an amount to be

determined at trial.

SIXTEENTH CLAIM FOR RELIEF
PROMISSORY ESTOPPEL

203.   Mr. Luzquiños realleges and incorporates by reference paragraphs 1 through 202 above.

204.   By her actions stated above, Defendant Myers promised to pay Mr. Luzquiños's medical

bills and related expenses.

205.   By his actions stated above, Mr. Luzquiños reasonably relied on the promise to his

detriment.

206.   As a proximate result of this conduct, Mr. Luzquiños suffered and continues to suffer

economic losses.

207.   Mr. Luzquiños is entitled to compensatory damages from Defendants in an amount to be

determined at trial.

SEVENTEENTH CLAIM FOR RELIEF
FAIR LABOR STANDARDS ACT RETALIATION

208.   Mr. Luzquiños realleges and incorporates by reference paragraphs 1 through 207 above.

209.   By her actions stated above, including bringing retaliatory counterclaims against Mr.

Luzquiños, Defendant Myers has discriminated against Mr. Luzquiños for filing a

complaint under the Fair Labor Standards Act, in violation of 29 U.S.C. § 215(a)(3).

210.   Mr. Luzquiños is entitled to relief pursuant to 29 U.S.C. § 216(b), including an award of

compensatory and punitive damages from Defendants in an amount to be determined at

trial, and a complete bar to recovery by Defendant Myers on her counterclaims against Mr. Luzquiños.

JURY DEMAND

Mr. Luzquiños demands a trial by jury.

PRAYER FOR RELIEF

WHEREFORE, Mr. Luzquiños respectfully requests that this Court:

a)      Award compensatory damages to Mr. Luzquiños for unpaid minimum wages pursuant to 29 U.S.C. §§ 201 et seq. and New York State Labor Law §§ 190 et seq. and §§ 650 et seq., in an amount to be determined at trial;

b)      Award compensatory damages to Mr. Luzquiños for unpaid overtime premiums pursuant to 29 U.S.C. §§ 201 et seq. and New York State Labor Law §§ 190 et seq. and §§ 650 et seq., in an amount to be determined at trial;

c)      Award liquidated damages to Mr. Luzquiños pursuant to 29 U.S.C. §§ 201 et seq. and supporting regulations and orders of the U.S. Department of Labor, and New York State Labor Law §§ 190 et seq. and §§ 650 et seq. and supporting regulations and orders of the New York State Department of Labor, in an amount to be determined at trial;

d)      Award Mr. Luzquiños compensatory damages, punitive damages and pain and suffering damages resulting from Defendant Myers's violations of New York State Labor Laws §§ 200, 215, 240 and 241 in an amount to be determined at trial;

e)      Award compensatory damages to Mr. Luzquiños under the doctrines of unjust enrichment and quantum meruit, in an amount to be determined at trial;

f)      Award Mr. Luzquiños compensatory damages resulting from Defendant Myers's breach of contract, in an amount to be determined at trial;

g)      Award Mr. Luzquiños compensatory damages under the doctrine of promissory estoppel, in an amount to be determined at trial;

h)      Award Mr. Luzquiños attorneys' fees and costs pursuant to 29 U.S.C. § 216(b) and New York State Labor Law § 663; and

i)      Grant such additional and further relief as the Court deems just and proper.


Dated:          April 10, 2007
                New York, New York

                        Respectfully submitted,

                        S/_____
                        WASHINGTON SQUARE LEGAL SERVICES, INC.
                        Jennifer Wagner, Legal Intern
                        Maureen Schad, Legal Intern
                        Daniel Hennefeld, Legal Intern
                        Mayra Peters-Quintero (MP 1844)
                        245 Sullivan Street, 5th Floor
                        New York, NY 10012
                        (212) 998-6430

                        WORKERS' RIGHTS LAW CENTER OF NEW YORK, INC.
                        Kati L. Griffith (KG3291)
                        Patricia C. Kakalec (PK8452)
                        101 Hurley Ave., Suite 5
                        Kingston, NY 12401
                        (845) 331-6615

                        Attorneys for Plaintiff Jorge Luzquiños